Judge Mills
delivered the opinion of the Court.
Hubbard Taylor and George Webb signed, and deposited in the office of the late Kentucky Insurance Company, the following letter of attorney.
Like power
Lane and Taylor’s notes to H. Taylor and Webb, paya^ ble at the Lexington Br. Bank.
Endorsement sued upon.
Plea of Taylor> denying
“We hereby authorize and appoint James E. Pearson our lawful agent to sign and endorse notes for us, and in our names, at the office of the Kentucky insurance company, guaranteeing all our said agent may legally do as aforesaid. Done at Lexington January 17th, 1815.
(Signed) Hubbard Taylor,
George Webb.”
At the same time they also signed and deposited a similar writing in the branch bank of Kentucky at Lexington, reading in precisely the same words, except that instead of the clause “at the office of the Kentucky insurance company,” the words “at the Lexington branch bank” were inserted.
On the 21st of November, 1816; the firm of Lane and Taylor, composed of William N. Lane and George G. Taylor, by their agent, made in the office of Lie insurance company, three notes payable at twelve, twenty-four, and thirty-six months, the last of which is to the following effect:
“We promise to pay Hubbard Taylor and George Webb, or order, four thousand six hundred and fourteen dollars, forty cents, negotiable and payable at the Lexington branch bank, without defalcation, value received.
(Signed) Lane and Taylor,
By Thomas Curry, attorney in fact.
These notes were, at the same time, thus endorsed in blank:
“For II. Taylor, J. E. Pearson,

George Webb.”

Afterwards, and before the charter of the insurance company expired, this last note above copied, was transferred by the insurance company, by delivery, to James Morrison, who filled up the blank endorsement to himself, and prosecuted Lane and Taylor, the makers thereof, to insolvency, and then brought this action against Hubbard Taylor and George Webb, to subject them, as endorser’s, to the. contents of the note. The process was returned as to George Webb, “no inhabitant,” and consequently abated as to him, and was executed on Hubbard *84 Taylor, who put in a plea, denying the endorsement of the note by him.
Evidence on the trial, upon the question o'- the authority oí Pearson, the attorney who endorsed Taylor’s name.
To prove his endorsement, thé plaintiff .below gave in evidence the foregoing letters of attorney, and proved that Lane and Taylor were relatives or connexions of Hubbard Taylor ?ind George Webb, and were partners in merchandise, and that, they, as well as H. Taylor, and G. Webb, lived in Clarke county, and bail sundry dealings in the banks at Lexington in Fayette county, That H. Taylor, before the execution of these letters of attorney, applied to, J. É. Pearson, who lived in Lexington, telling him, that he, “H. Taylor and G. Webb, had determined to sustain the credit of the house of Lane and Taylor, (which was then doubtful or sinking) in the banks at Lexington, and that it was 'inconvenient for him, H. Taylor, as he resided in Clarke, to attend at the banks, and sign and endorse notes, and requesting Pearson to act as agent for that purpose.” To which he assented, and shortly thereafter, the aforesaid letters of attorney were filed, each in the bank named therein, and he, Pearson, on sev-eraljjdifferent occasions, in the aforesaid banks, endorsed notes for said tí. Taylor and George Webb,none of which appears to have been disputed, but these. Thai these three notes were the first ever, given, and endorsed for, this debí, and the debt was not. originally due from Lane and Taylor to the bank; but from another individual who had failed, and Lane and Taylor, being the endorsers of this debt, were likely to lose their credit in bank by bis faildi’e, whereupon they compounded the' matter with the bank, and agreed to give their own notes, at long credit, with tí. Taylor and George Webb as endorsers. That accordingly,' the notes were prepared at bank, and signed by the agent of Lane and Taylor, and" the agqnt Pearson, was called upon by one of the officers of the bank, to endorse them for Webb and tí. Taylor, and'he refused lo. do so. Some short time'aft'er this‘refusal, Webb called upon Pearson to' go to the bank, and endorse for H. Taylor, and assured him he might do so with safety; whereupon, confiding in Webb, Pearson went to the bank, and Webb endorsed his own name, and *85 he, Pearsqn, endorsed fqr H. Taylor at the instance of Webb; and the note in contest, is one of those so endorsed.
Instructions; verdict and judgment for Taylor. '
Where the principal places his factor or clerk before the world as his general agent, hemay be bound, though his , authority be . exceeded.— 'Otherwise, where the party whom the transaction is with, holds the letter of at- • torney.
Taylor's power of attorney to Pearson, to sign and endorse notes for him and in his name, at the Bank, gave Pearson authority to sign and endorse any note payable at, and due to the Bank.
The court below directed the jury to find as in case of a nonsuit, on the ground that the proof of the agency was insufficient to bind H. Taylor. The jury found for the defendant, and he had judgment, from which the plaintiff below appealed.
It is evident, that this question must turn on the sufficiency of the power to Pearson, or rather, whether he exceeded his authority in thus endorsing. We will here observe, this agency cannot be construed in all respects as other agencies, created to deal with the world generally, such as the case of factors or clerks. In such cases, it may often happen that an agent may exceed his authority, and yet his principal be bound, because, by the allowance of the principal, the agent, by,his acts, is placed before the world as a general agent, when he is not so in fact. Here, however, the bank, and .and not the agent or principal, held this authority. It was in the hands of those with whom the agent was to deal for the principal, and that they must look to the authority and to the consequenses, if the agent exceeded it.
We cannot construe this power as unlimited and general. It could not be intended to authorize the agent to endorse notes for every one, or to every one to whom the agent might see fit to sign or endorse notes for his principals. For two things in it forbid such a construction. It is only “at the bank,” that the agent is allowed to endorse or sign, and when it is construed'by the. circumstances to which it is intended to apply, as all other writings must be construed, these expressions limited the ed the power, and-only included such notes as were the property of the bank, or for debts due the bank and payable therein, and not debts or notes due and belonging to others, and payable elsewhere. And in the second place, it does not give to the agent power, expressly to' make the contracts, to secure which, the notes should be signed and endorsed. The principals were to make the contracts; the a *86 gent waste reduce their, to writing. The authority is simply to sign and endorse notes, without saying what notes, or for what persons. But although we have said this power is not unlimited, yet as it specifies no particular notes, or debts, or particular persons for which the agent is to endorse, we conceive that the bank had a right from its terms to accept the endorsement of the agent on behalf of the principals, which the agent might endorse for them on any note, provided the note was payable r.t bank, and due to the institution. The bank, or its officers, arc not privy to every arrangement, between makers and endorsers, and cannot be supposed to be so. This is often, and usually in accommodation notes, a matter between the maker and endorser, and all that the bank has to. look to, is, whether the name of the endorser is placed there by himself or his order. The question there* fore, whether I!. Taylor had agreed with Lr.v.e and Taylor to endorse for them, or whether he had given his agent special instructions to do so, isa matter they need not inquire into, provided the a* gent appeared and professed a willingness to endorse. As to whose notes, or what ldnd, the power in the hands of the bank was general, provided they belonged and were payable to them, and the officers had a right to presume, that the principal approved the act of the agent. It may he said that this is giving to the agent a most alarming power, to endorse al! the debts due to the bank for his principal. To this we answer, that the check on tliis was the honesty and prudence of tiie agent, and to that the principal confided, and must abide the consequences, if his confidence was misplaced.
So far, then, as the decision of the court below goes on the ground of want of proof, that II. Taylor gave his special assent to the endorsement of those notes for Lane and Taylor; or that he agreed with Lane and Taylor to aid their credit by taking up the notes of the defaulter, whose paper Lane and Taylor had previously endorsed, it cannot be sustained. The bank had a right to presume that.
Til:; expression in the power “sign and endor-e notes at the bank” referred, not to the place where the agent should do the act, but confined his power to the signing and endorsing of notes made payable at, and due to ike bank,
Agent had power to°endorse a note a debt duet0 the
But as we have said the power is not unlimited, we will consider the only limit that occurs to us, as calculated to operate in favor of Taylor. The agent was to sign and endorse notes only "at bank.” This we do not apprehend, meant the locality of the act only, but conceive that it has a more important meaning; and that it was an expression, intended to limit the agent to debts due the bank, and made payable therein; and not to permit him to endorse notes for any other land of cloht, due, and payable to any other person, provided he made the endorsement «t the banking hoars, it would be absurd to suppose that the letter of attorney, placed all the force of the obligation on the particular spot where the signature was made. It is more reasonable to suppose, that if the agent, at any other place, made an endorsement on a note payable at the bank, and due to it, that it would be binding at bank, and the particular spot where lie placed his feet when he used his pen, cannot beso material, or intended by the expressions, “at the bank.” This construction of these words, frees the cauce from the difficulty thrown in the way, by the existence of two letters of attorney, one in each haul;, and shows that each liad their appropriate object and use, and hence, both were necessary. Under one, the agent was to endorse the debts due, or belonging to that particular bank, in which the power was filed; under the other, he must execute his authority for the debts due to the other. If, therefore, this note is a good execution of the authority, it must be the authority conferred by the letter of attorney filed in the office of the insurance company, because the debt belonged to that bank; and the contract was exclusively made with it, and cannot be sustained under the authority filed in the branch bank, wliicb latter bank at that time, was a complete stranger to the notes or contracts.
The only grouipd, therefore, on which it Can be contended that this was not a good execution of the power, is, that this note was made payable, not in, or at the branch bank in which it was executed, but in the bank of Kentucky. This may seem untenable at first, but upon examination it will *88 be found to be a serious departure from the intern-tioa of the'authority conferred. Such .a circumstance of executing obligations for debts due in one payable and negotiable in another, cannot be a usual one with regard to notes, although it may },e with regard to bills of exchange. The place of payment is thus changed, credit is jeopardized in. another quarter, and at another place., which was not intended by the principal, especially as the dealings of the party in one institution, is thus disclosed to another, and he may be thrown into other hands not contemplated by him, with whom he cannot compound or gain time, in case of the default of his principal. These reasons may be entitled to some weight against this change of place and shifting of creditor. But there is another which has still greater weight. It has not been used in argument, but it has occurred to the court as one of considerable force. It has been urged that the debt would be the same, and no more, in the hands of the bank of Kentucky, than in the insurance company; the place of payment was in the same town, and that in and to a bank where the principal, by another letter of attorney, had authorized the same agent to deal for him, in signing and endorsing notes, and that the liability of all the parties, would be no greater in the branch bank of Kentucky, than in the insurance office.
Insurance Company, bleat the1" Lexington Br. Bank.
An attorney authorized to at theSoffioe6S of the Kentucky Ipsur-coukiVoTen-dorse a note payable at the Lex. Br. Bank: the increased re, sponsibility of the parties to such notes, held to be a fatal objection.
*88 If it be granted that the liability of the endorsers would be no greater by the change, this argument might prevail; but it will be seen that this liability would be greatly enhanced, so much so, that the agent could not be authorized to make the change of place of payment, and institution to which the money should be paid.
It will be seen by inspecting the charter of the insurance company, long since expired, that there is n0 cianse or provision in it raising notes discounted by or belonging to that bank to the footing of bills of exchange. They were left as notes in the hands 0f other dealers or individuals,- and made assigna? ble, not subject to the law merchant, but under the provisions of the act. What is the liability of un-dorsers or assignors on such notes? A train of ad? *89 jLocations have settled it. The assignee holds the paper subject to any defence, at law or equity, which may exist between maker and payee; or the maker and any of the assignees before notice of the assignment. To reach the endorsers at all, the holder must first sue the maker, and pursue with due and reasonable diligence to insolvency, and get nothing. If, in the mean time, he makes a slip in his pursuit, or a few days or weeks delay, his remedy is gone as to the assignee for ever. If he keeps due pace in his pursuit, and gains nothing, then he can resort tb the assignor, and recover, not always the amount of the note, but as much as he has paid for it, 6r as much as he has been injured by trusting the credit of the assignor or endorser. Such was the case of all notes endorsed to and held by the insurance company, during its existence. But how is this matter with regard to the bank of Kentucky and its branchches? The charter of that institution does not allow it to discount or purchase any notes, except those expressly made payable on the face thereof (as this is) at the bank or one of its branches, and then places all the notes, thus payable and discounted, Oh the same footing with foreign bills of exchange, except as to damages; so that every endorser becomes, on failure of payment, a principal in the first instance, aud may be sued jointly with, or even without the maker, and be made liable at once, to the whole contents of the note, while the maker is left untouched, aud all equity and discounts are barred. This is widely different from the precarious liability of endorsers on notes due to, and payable at the insurance company, and by comparing, or rather contrasting the two, it will be found, that the change made in the .condition of the appellee, by making this note payable, and negotiable at the branch bank, was a great one, and beyond the power of the agent to make, under the authority to sign and endorse “at the office of the insurance company,” which we have already seen, means notes belonging to, and payable at the bank alone.
That the note payable at the Lex. • Branch, vra.3 not after-wards discounted at the hank, did not help the lack of power in the attorney • to endorse . 'it.
*89 It may be said, that this more certain, dangerous, and fixed liability, attached to, and following endorsers on notes in the bank of Kentucky, or branches, *90 was contingent only, and never attached to notes made payable there, until they were actually discounted by the bank, and as this was never there discounted, the liability of the endorser was not in fact increased. This is true with regard to such notes. If they are made payable, but not actually discounted, they do remain as other notes; and it is for this reason that the appellant has in this instance, or rather his testator, thought it necessary to pursue the makers by suit, before he has sued the endorsers. But the extent of authority in the agent does not depend upon what has been done, or may happen to the note after it is endorsed; but upon the question, whether conferring this quality and obligation to the instrument, was within the scope of his authority, when he endorsed. It was made of a kind and class more dangerous, and formidable to the endorsers, than notes payable at, and belonging to the insurance company, which alone, he was authorized to endorse; and it was done with a design of transferring the debt to the bank of Kentucky, and Morrison, or any other holder might have negotiated it then, and if he had done so, the situation of the endorsers would now have been widely different, if it had been obligatory at all. On this point, we conceive that the change of place of payment, and the negotiable quality attached to this one, did not come within the scope of the authority given and filed at the office of the insurance company, which alone applied to notes belonging to that institution, and that there is no error in the judgment of the court below, and it must be affirmed with costs.
Wickliffe, for appellant; Haggin, Loughborough., -.Crittenden and Hanson, for appellee.